## IN THE UNITED STATES DISTRICT COURT
## THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| OWEN RICKER        Plaintiff, | : |
| v. | :     Civil Action No.: |
| ALEJANDRO MAYORKAS, Secretary, U.S. Department of Homeland Security        Defendant. | : |

### PRO SE COMPLAINT

1. Plaintiff Owen Ricker(hereinafter "Plaintiff"), hereby files this Complaint pro se against Alejandro Mayorkas, in his capacity as Secretary of the U.S. Department of Homeland Security[1] (hereinafter "Defendant"), alleging that his rights, pursuant to the Rehabilitation Act ("Rehabilitation Act") of 1973, as amended, 29 U.S.C. §791 and 794 et seq., have been violated, and avers as follows:

### PARTIES

2. Plaintiff resides at 1890 S. Delaware Dr., Easton, PA, 18042.

3. Defendant oversees a federal government department that receives federal financial assistance, and that is engaged in an industry or activity affecting commerce which employed 15 or more employees in all of its facilities each working day during each of 20 or more calendar workweeks in the current or preceding year.

4. Defendant's specific agency within the Department of Homeland Security that is the subject of this complaint is the Transportation Security Administration ("TSA") which is responsible for security at United States' airports. TSA which also receives federal financial assistance and is engaged in an industry or activity affecting commerce which employed 15 or more employees in all of its facilities each working day during each of 20 or more calendar workweeks in the current or preceding year. The specific airport where the events took place forming the basis for this complaint is the Philadelphia International Airport located at 8000 Essington Ave, Philadelphia, PA 19153.

### JURISDICTION AND VENUE

5. Plaintiff incorporates the preceding paragraphs as if set forth more fully at length herein.

6. Subject-Matter Jurisdiction is conferred upon this Honorable Court by 28 U.S.C. § 1337 relating to "any civil action or proceeding arising out of any act of Congress regulating

1

commerce," 28 U.S.C. § 1343(4), and 28 U.S.C. § 1331, and under the Rehabilitation Act ("Rehabilitation Act") of 1973, as amended, 29 U.S.C. §791.

7. This Court may properly maintain personal jurisdiction over Defendant because Defendant's contacts with this state and this judicial district are sufficient for the exercise of jurisdiction over Defendant to comply with the traditional notions of fair play and substantial justice, thus satisfying the standard set forth by the United States Supreme Court in *International Shoe Co. v. Washington*, 326 U.S. 310 (1945) and its progeny.

8. Venue is appropriately laid in the United States District Court for the Eastern District of Pennsylvania pursuant to 28 U.S.C. § 1391(b)(2) inasmuch as all parties regularly conduct business within this District and the acts complained of by Plaintiff arose herein.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

9. Plaintiff hereby incorporates the prior paragraphs of this Complaint as though fully set forth at length.

10. Plaintiff exhausted his administrative remedies as required under federal and state law.

11. Specifically, Plaintiff filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"), Office of Federal Operations, on or about February 4, 2017, Agency No. HS-TSA-0181-2017. On or about November 10, 2020, Plaintiff's case was transferred to an EEOC Administrative Judge. Hearing No. 570-2016-00346X On or about January 15, 2021, an EEOC Administrative Judge granted Defendant's Motion for a Decision Without a Hearing. On or about March 24, 2021, Plaintiff filed an appeal of the EEOC Administrative Judge's decision (Appeal No. 2021002549). On or about June 29, 2022, Plaintiff's appeal was denied and he was informed of his right to file a federal lawsuit. This Complaint is being filed within ninety ("90") days of Plaintiff's receipt of his right to sue.

## FACTS

12. Plaintiff is a 32-year-old male with a qualified disability. He experiences noticeable behavioral side effects of his disability such as social and communicative impairments. Plaintiff's side effects of his disability also include an unusually strong adherence to routines and patterns.

13. On or about early January 11, 2015, Defendant hired Plaintiff as a part time Transportation Security Officer (TSO) at the Philadelphia International Airport (PHL). Plaintiff was assigned to work at Terminal A West. Plaintiff was informed he would be placed on a standard two-year probationary period.

14. Plaintiff disclosed his disability to Defendant in his pre-employment intake form. Upon being informed of his disability, the TSA Human Resources department required Plaintiff to undertake a psychiatric evaluation confirming his mental fitness to work as a TSO. Plaintiff met with a psychiatrist as instructed, who submitted a report directly to

2

Defendant. Defendant then approved Plaintiff for duty, and Plaintiff reported to his first work shift on January 11, 2015.

15. In addition to it being formally documented, Plaintiff's disability was also readily apparent to members of Defendant's staff and management who Plaintiff interacted with.

16. On or about mid- July 2015, Plaintiff placed a transfer bid and was assigned to Terminal C where he was placed under the supervision of Senior Transportation Security Officers (STSO) David Torres ("STSO Torres") and Margaret Hamilton ("STSO Hamilton"). On or about August 2015, Plaintiff was promoted to a full-time TSO.

17. From July 2015 - October 2015, STSO Torres harassed Plaintiff and created a hostile work environment for him. A few weeks after Plaintiff's arrival at Terminal C, STSO Torres told Plaintiff that he was aware of Plaintiff's "condition" and that Plaintiff would not be able to use it as an excuse. Plaintiff reasonably inferred that STSO Torres was referring to his disability. This unprompted statement made Plaintiff uncomfortable and fearful of upcoming hostility. For the next two months, STSO Torres proceeded to unnecessarily and overly criticize Plaintiff's screening techniques in a manner that exceeded his criticism of Plaintiff's coworkers, and he openly disparaged Plaintiff in front of coworkers. STSO Torres also made multiple sexually inappropriate comments to Plaintiff, where he asked Plaintiff to praise his physical attractiveness, and repeatedly commented on Plaintiff's masculinity. STSO Torres additionally made jokes at Plaintiff's expense in front of his coworkers.

18. On or about October 13, 2015, Plaintiff was called into a private room with STSO Hamilton where he was accused of violating screening procedures and failing to maintain control of a walk-through metal detector. These alleged violations occurred during a period of time where Terminal C was understaffed, and Plaintiff was performing the job duties of two separate people. Plaintiff was urged to sign a written memorandum drafted by STSO Torres acknowledging these violations, however Plaintiff noticed multiple false statements in the memorandum and refused to sign it. STSO Hamilton then issued Plaintiff a Letter of Guidance and Direction instead.

19. Later in the day on or October 13, 2015, Plaintiff submitted a response to the Letter of Guidance and Direction, in which he stated the STSO Torres had singled him out for persistent and clearly unwanted verbal abuse and was harder on him than on his coworkers. Plaintiff stated that STSO Torres' harassment of him was pervasive to the point that another TSO agent had intervened on Plaintiff's behalf to ask that STSO Torres leave him alone. Plaintiff stated that STSO Torres was aware of Plaintiff's disability and believed that STSO Torres' hostile and inappropriate behavior towards him was a result of his disability.

20. On or about the morning of October 17, 2015, Plaintiff arrived at work and observed STSO Torres reading Plaintiff's response alleging discrimination while sitting at the sign-in desk. STSO Torres then walked up to Plaintiff in a visibly angry state and pressured Plaintiff to apologize for complaining about mistreatment. As a result of this coercion and

3

a desire to deescalate this interaction Plaintiff complied and informally apologized to STSO Torres. Plaintiff did not however rescind or amend his complaint of discrimination in his response.

21. In the days and weeks following Plaintiff's October 13, 2015, response complaint, STSO Torres's harassment of Plaintiff increased in intensity and in frequency to almost daily occurrences. STSO Torres began further scrutinizing and monitoring Plaintiff's work in a manner that exceeded his treatment of other employees, and began unnecessarily correcting Plaintiff's actions by physically grabbing him and manipulating his hand movements.

22. On or about October 20th, 2015, TSA Human Resources informed Plaintiff that his concerns about discrimination were being taken seriously and provided him with information for contacting the TSA Office of Civil Rights. However, Plaintiff chose not to contact the Office of Civil Rights within the allotted 45-day window out of fear of further retaliation. He knew that according to agency policy, he could not place a new bid to transfer away from STSO Torres until January 2016, and therefore would likely have to work under STSO Torres for several months after filing a civil rights complaint against him.

23. On or about October 27, 2015, Plaintiff received a performance review from STSO Hamilton where he was rated "achieved expectations" or "exceeded expectations" in all performance categories, demonstrating that STSO Torres' scrutiny and criticism of Plaintiff was unwarranted and not shared by Plaintiff's other superiors.

24. On or about January 2016, Plaintiff submitted a bid to be moved out of Terminal C at the first eligible opportunity so that he would no longer have to work under STSO Torres. Defendant approved Plaintiff's request and moved him to Terminal F, where he was placed under the supervision of STSO Dawn Denmark ("STSO Denmark"). At this time, Plaintiff was also promoted as part of his career progression after completing a full year of satisfactory work.

25. From February 2016 - April 2016, Plaintiff received multiple awards for his work from various supervisors and behavior detection officers, and an overwhelmingly positive mid-year review.

26. On or about June 2016, Plaintiff's superiors began repeatedly changing around his work schedule, station location, and time for scheduled breaks, and even completely removed some of Plaintiff's breaks from his schedule in violation of TSA policy. These actions caused Plaintiff to experience distress and adjustment difficulties because of his disabilities. Plaintiff would sometimes became visibly distressed by these changes, leading to two lead TSO's by the names of Daniel Szlanic and Shawn Croom laughing at him.

27. On or about May 2016, STSO Denmark sent an email to human resources where she noted that Plaintiff became distressed when his work schedule or work location was

adjusted and developed difficulty focusing. Despite the common knowledge of Plaintiff's disability, HR and TSO leadership failed to engage Plaintiff in discussion about his new adjustment difficulties and did not make any attempt to determine if an accommodation could be reached for Plaintiff to improve his productivity.

28. On or about August 10, 2016, Plaintiff reported to STSO Denmark that he was being harassed by lead STSOs for his scheduling adjustment difficulties. STSO Denmark refused to address the problem and sent Plaintiff to meet with Human Resource Specialist Richard Leith ("HRS Leith").

29. On or about August 22, 2016, Plaintiff emailed HRS Leith with a reasonable accommodation request based on his qualified disability. Plaintiff explained that his daily break schedule being changed around so erratically disturbed him, and requested that his breaks occur within thirty (30) minutes of when they were actually scheduled, whenever possible. Plaintiff also requested transfer to another airport, since he believed that STSO Denmark had ignored his mistreatment by staff under her supervision and he had generally lost confidence that he would be treated properly at PHL.

30. On or about August 24, 2016, HRS Leith engaged in email communications with Assistant Federal Security Director William Myers (AFSD Meyers), in which they discussed removing Plaintiff from his TSO position altogether. However, HRS Leith stated he had spoken with agency legal counsel, who advised that taking negative action against Plaintiff could be considered discrimination or retaliation based on Plaintiff's disability. Instead of removing Plaintiff from his position, HRS Leith chose to "accommodate" Plaintiff by sending him back Terminal C, where he would be placed back under the supervision of STSO Torres.

31. On or about August 27, 2016, Plaintiff met with HRS Leith in person, who informed Plaintiff that he would be moved back to Terminal C. Plaintiff did not understand why - out of six (6) terminals at PHL- Defendant chose to move Plaintiff back to Terminal C where he would again be under the supervision of the person whom he had alleged discriminated against him. Plaintiff was not given any indication that his reasonable accommodation request had gone through any of the proper documentation and reporting procedures. During this meeting, HRS Leith also showed Plaintiff a copy of his personnel file which contained his October 2015 response complaint that discussed his belief he was being discriminated against based on his disability.

32. Once Plaintiff returned to Terminal C, STSO Torres immediately resumed retaliating against Plaintiff. On or about August 30, 2016, Plaintiff's second day back working with STSO Torres STSO Torres instructed Plaintiff to check a passenger's back brace in a manner that did not conform with TSA protocol. Plaintiff knew that if he did not follow STSO Torres' exact instructions, he risked being reported for insubordination. Therefore, in an effort to avoid upsetting STSO Torres, Plaintiff screened the passenger exactly how STSO Torres instructed. Afterwards, STSO Torres reported Plaintiff for failing to follow proper procedure, even though Plaintiff had acted under his direction.

33. On or about August 31, 2016, the following day, Defendant informed Plaintiff he was being removed from screening duties and placed in a limited duty role.

34. Plaintiff notes that multiple TSO employees at PHL committed screening breaches yet did not receive the same level of discipline as Plaintiff where they were stripped of their screening duties. Specifically, in August 2016, a TSO agent named Kathy Armstrong ("TSO Armstrong"), a similarly situated employee to Plaintiff who was also still in her probationary period, allegedly caused an actual security breach. TSO Armstrong's action was worse than Plaintiff's, as Plaintiff was only accused of causing a potential breach. Yet, Defendant only ordered TSO Armstrong to attend a retraining session for her infraction, which is significantly lesser penalty than what Plaintiff received as discipline.

35. On or about September 2, 2016, Defendant ordered Plaintiff to undergo a medical fitness for duty test with their Office of Chief Medical Officer (CMO) to determine whether Plaintiff could perform his screening job duties. Plaintiff was determined to be fit for duty, and immediately requested to return to his full duty TSO role. However, Defendant stated without explanation that they could not return him to full duty yet.

36. On or about October 7, 2016, Defendant terminated Plaintiff from employment for alleged performance issues.

37. Following his termination, Plaintiff struggled to obtain new employment for approximately five (5) months and has specifically been unable to obtain employment specifically with a government agency. All of the employment opportunities Plaintiff has obtained since Defendant terminated him paid considerably less salary and offered less benefits than his position with Defendant.

38. **WHEREFORE**, Plaintiff seeks the damages set forth in the Prayer for Relief clause of this Complaint, *infra*.

## COUNT I
## DISCRIMINATION IN VIOLATION OF THE REHABILITATION ACT

39. Plaintiff has a qualified disability that he reported to Defendant at the start of his employment.

40. Defendant's staff exchanged messages with each other as well as direct communication with Plaintiff where they discussed his disability and his behavioral mannerisms due to his disability, and STSO Torres specifically acknowledged his awareness of Plaintiff's disability to Plaintiff.

41. Defendant discriminated against Plaintiff based on his disability in the form of harassment and hostility when STSO Torres, unprompted, informed Plaintiff that he was aware of Plaintiff's disability and that Plaintiff wasn't going to be able to use it as an excuse. STSO Torres then proceeded to disparage Plaintiff, overly criticize Plaintiff, and abuse Plaintiff in a matter different than his coworkers.

42. Defendant discriminated against Plaintiff by issuing him a Letter of Guidance and Direction based on false claims and based on alleged violations that Defendant knew

occurred during a time period where Plaintiff was forced to perform job duties of two employees.

43. Defendant discriminated against Plaintiff when they failed to address Plaintiff's complaint of mistreatment in Terminal F where employees were mocking Plaintiff for being distressed over changes to his work schedule, a manifestation of his known disability.

44. After STSO Torres reported Plaintiff for an alleged screening violation in August 2016, Defendant discriminated against Plaintiff by stripping him of screening job duties. Defendant then discriminated against Plaintiff by requiring him to take a medical fitness for duty test in order to have his full-time job back.

45. After Plaintiff successfully passed the fitness for duty test and requested to return to full-time work, Defendant discriminated against Plaintiff by refusing to allow Plaintiff to return to full-time assignments.

46. Defendant then terminated Plaintiff from employment based on his disabilities.

47. Plaintiff prays that Defendant be required to provide all appropriate remedies available under the Rehabilitation Act.

## COUNT II
## RETALIATION IN VIOLATION of the REHABILITATION ACT

48. Plaintiff hereby incorporates the prior paragraphs of this Complaint as though fully set forth at length.

49. Plaintiff has a qualified disability that he reported to Defendant at the start of his employment.

50. Defendant's staff exchanged messages with each other as well as direct communication with Plaintiff where they discussed his disability and his behavioral mannerisms due to his disability, and STSO Torres specifically acknowledged his awareness of Plaintiff's disability to Plaintiff.

51. Defendant issued Plaintiff a Letter of Guidance and Direction based on false claims and which occurred during a time period where Plaintiff was forced to perform job duties of two employees.

52. In response to this Letter, Plaintiff expressed his belief that STSO Torres had been harassing him on the basis of his disability and treated him differently than his coworkers. Defendant acknowledged receipt of this response and told Plaintiff that they were taking his discrimination matter seriously.

53. After Plaintiff submitted a response complaint alleging that he was being harassed by STSO Torres based on his disability, Defendant retaliated against Plaintiff in violation of the Rehabilitation Act when TSO Torres angrily confronted Plaintiff and forced him to apologize for his complaint. STSO Torres then proceeded to increase his hostility towards Plaintiff and reported him for frivolous alleged violations.

54. After Plaintiff was able to transfer away from STSO Torres' supervision for several months, Defendant retaliated against Plaintiff in violation of the Rehabilitation Act when they chose to transfer Plaintiff back to Terminal C. Defendant took this action knowing there were alternative locations to transfer Plaintiff and , and with the knowledge that

Plaintiff had previously complained about harassment by STSO Torres, and that STSO Torres would likely continue to harass Plaintiff moving forward.

55. The second day Plaintiff worked with STSO Torres back in Terminal C, STSO Torres immediately resumed his prior retaliation of Plaintiff by giving Plaintiff instructions he knew were improper, and then reporting Plaintiff for following the improper instructions. As a result, Defendant removed Plaintiff from his screening duties and then terminated him from employment.

56. Plaintiff prays that Defendant be required to provide all appropriate remedies available under Title VII of the Civil Rights Act.

## COUNT III
## FAILURE TO ACCOMMODATE IN VIOLATION of the REHABILITATION ACT

57. Plaintiff hereby incorporates the prior paragraphs of this Complaint as though fully set forth at length.

58. Plaintiff has a qualified disability that he reported to Defendant at the start of his employment, and which was well known to the TSA PHL Staff.

59. Defendant violated the Rehabilitation Act when they became aware that Plaintiff was having disability-related difficulties as a result of his work schedule being constantly changed around without his prior knowledge. Despite this, Defendant failed to engage in an interactive process to try to accommodate Plaintiff based on his disabilities.

60. Defendant violated the Rehabilitation Act when Plaintiff submitted a formal request for a reasonable accommodation based on his disabilities, and Defendant verbally denied his request without going through required procedures or properly engaging in an interactive process. Instead, Defendant transferred Plaintiff back to Terminal C to be placed back under the supervision of a person he had previously complained about for discriminating against him.

61. Plaintiff prays that Defendant be required to provide all appropriate remedies available under Title VII of the Civil Rights Act.

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff requests that this Court grant him the following relief against Defendant:

(a)    Compensatory damages;

(b)    Punitive damages (where applicable);

(c)    Liquidated damages (where applicable);

(d)    Damages for emotional pain and suffering;

(e)     Reasonable attorneys' fees;

(f)     Recoverable costs;

(g)     Pre and post judgment interest.

Respectfully submitted,

Owen Ricker

Owen Ricker
Pro Se Plaintiff

9

## VERIFICATION

I, Owen Ricker, hereby verify that I am the Plaintiff in the within Complaint and that the statements made in the foregoing Complaint are true and correct to the best of my knowledge, information and belief.

I understand that false statements are made to the penalties of 18 Pa. C.S.A. §4904, relating to unsworn falsification to authorities.

_Owen Ricker_

Owen Ricker
Plaintiff

Date: 9/26/2022

10